UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MARGERITA NOLAND-MOORE, | ) | CASE NO.  1:18-cv-02730 |
| *On behalf of herself and all others* | ) | |
| *similarly situated,* | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| Plaintiff, | ) | **JOINT MOTION FOR** |
| | ) | **PRELIMINARY APPROVAL OF** |
| *v.* | ) | **CLASS ACTION SETTLEMENT** |
| | ) | |
| CITY OF CLEVELAND, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff Margerita Noland-Moore and Defendant City of Cleveland respectfully and jointly move the Court to (1) preliminarily approve the proposed settlement of Settlement Class Members' claims pursuant to Rule 23(e), (2) approve a proposed notice to Potential Settlement Class Members, (3) appoint Scott & Winters as interim Class Counsel; and (4) schedule a Final Fairness Hearing. A proposed Preliminary Approval Order is attached as Exhibit 2.

The Joint Stipulation of Class Action Settlement and Release ("Settlement" or "Settlement Agreement"), attached as Exhibit 1, calls for an opt-out Settlement pursuant to Fed. R. Civ. P. 23 for allegations pertaining to overtime wage law claims. The Settlement will apply to Representative Plaintiff Margerita Noland-Moore ("Plaintiff") and to all other members of the proposed Settlement Class (collectively referred to as "Settlement Class" or "Class Members"). The Settlement Class consists of:

> All present and former hourly employees of Defendant who received longevity pay and/or shift differential pay that was not rolled into their overtime pay during the period November 26, 2015 to November 26, 2019.

*See* Settlement Agreement (Exhibit 1 at ¶ 3).

The Settlement, achieved with the assistance of Mediator Jerome Weiss, resolves *bona fide* disputes involving overtime compensation under the FLSA and corresponding provisions of

Ohio wage-and-hour law, O.R.C. § 4111.03. Plaintiff alleged that she and other hourly employees of the City of Cleveland are owed overtime compensation and liquidated damages. (*See* Complaint, ECF #1; First Amended Complaint, ECF #10.) Defendant denied Plaintiff's claims and asserted affirmative defenses. (*See* Answer to Complaint, ECF #6, Answer to Amended Complaint, ECF #11.)

The 4,248 total potential Class Members will receive notice of their right to participate in the settlement, the total number of potential settlement class members and the total amount of the settlement proceeds on a global basis. The settlement results in an average gross Rule 23 class recovery of over $99.50 per Member of the Settlement Class. Each Potential Class Member will receive notice so that all Potential Class Members will be given the choice to participate or not to participate, including the right to preserve any individual claims or rights they may have against Defendant.

Plaintiff's claims were contested and settlement was achieved only through prolonged and difficult negotiations, including approximately seven months of negotiations, data production, and mediation. The Settlement is fair, reasonable, and adequate and satisfies the criteria for approval under the FLSA, 29 U.S.C. § 216(b), R.C. § 4111.01 *et seq*., and Federal Rule 23(e). If approved by the Court, the Settlement will provide individual settlement payments to Class Members representing a substantial percentage of their claimed damages.

The following settlement documents and proposed order are submitted for approval or entry by the Court:

Exhibit 1:    Joint Stipulation of Class Action Settlement and Release ("Settlement Agreement");

Exhibit 2:    Proposed Order Granting Preliminary Approval of Settlement ("Preliminary Approval Order", providing for notice and hearing);

2

Exhibit 3:    Proposed Notice of Class Action Settlement and Fairness Hearing;

Exhibit 4:    Declaration of Proposed Class Counsel (hereinafter "Class Counsel");

Exhibit 5:    Class Member List; and

Exhibit 6:    General Settlement and Release Agreement of Named Plaintiff.

The sections below explain the litigation, the negotiations, the Settlement terms, the proposed settlement payments and distributions, and the propriety of approval.

## I.    THE LITIGATION

### A.    The Claims and Issues

Plaintiff Margerita Noland-Moore filed a Class and Collective Action Complaint in this Action (ECF #1) on November 26, 2018, and a First Amended Complaint on February 3, 2019 (ECF #10). Plaintiff alleged that she and other hourly employees' longevity pay and shift differential pay was not properly factored into their overtime pay, and are owed overtime compensation, liquidated damages, attorneys' fees, and costs pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207, and Ohio Revised Code § 4111.03. (*Id.*) Defendant denied Plaintiff's claims and asserted affirmative defenses. (*See* Answer to Amended Complaint, ECF #11.)

### B.    Investigation, Discovery, Document Analysis, and Research

Between March and May of 2019, the Parties engaged in informal yet comprehensive discovery regarding the Plaintiffs' claims and the Defendant's defenses to such claims. Class Counsel also conducted extensive investigations into the facts before and during the prosecution of the Action. This discovery and investigation has included, among other things (a) meetings and conferences with the Plaintiff and other putative class members; (b) inspection and analysis of class-wide documents produced by the Defendant, including analysis of wage-and-hour

information and other data and documents comprising of over 2,000,000 data points from the records produced by Defendant; (c) analysis of the legal positions taken by Defendant; (d) investigation into the viability of class treatment; (e) analysis of potential class-wide damages; and (f) research of the applicable law with respect to the claims and potential defenses thereto.

Plaintiff has vigorously prosecuted this case, and Defendant has vigorously contested it. The Parties have engaged in sufficient investigation and discovery to assess the relative merits of the claims and of Defendant's defenses to them.

## II.    SETTLEMENT NEGOTIATIONS

Settlement negotiations were protracted and difficult. After participating in a full-day mediation with Mediator Jerome Weiss, a very seasoned and experienced mediator, on July 24, 2019 the parties were unable to reach a final resolution. Subsequent to the mediation, the Parties engaged in approximately three additional months of negotiations and ongoing mediation/settlement efforts through telephonic and electronic communications through Mr. Weiss. In advance of the mediation, the parties prepared and submitted mediation memoranda demands and responses addressing merits and damages issues. Subsequent to the mediation, the Parties exchanged settlement proposals in an effort to narrow their positions, and after prolonged and difficult negotiations the settlement was achieved in principal on October 22, 2019.

## III.    THE TERMS OF THE SETTLEMENT AND RELEASE OF CLAIMS

### A.    The Scope of Settlement

If approved by the Court, the proposed Settlement will resolve disputed claims between the Parties. The Settlement will resolve federal and state wage-and-hour claims of the named Plaintiff and all other members of the proposed Settlement Class pursuant to Fed. R. Civ. P. 23(e). As highlighted below, Defense Counsel and Class Counsel believe that certification and

Settlement are appropriate because the Released Claims are being compromised without need to establish the elements of those claims on which liability turns, in addition to providing a substantial recovery to Class Members in light of the procedural and substantive encumbrances underscored by Defendant. Named Plaintiff and Class Counsel believe the claims asserted in the matter have merit and that the evidence developed to-date supports the claims asserted. Defendants believe that they have valid defenses to Plaintiff's Claims. Plaintiff and Class Counsel recognize the risk and expense of trying and, if necessary, appealing this action, and believe that the Settlement confers substantial benefits upon the Class Members.

### B. The Proposed Settlement Payments and Distributions

**Total Settlement Amount.** Defendant has agreed to pay the Gross Settlement Amount of $619,322.13 as set forth in the Settlement Agreement (Exhibit 1 ¶¶ 15, 19a.). That sum will be used to make settlement payments to the Plaintiff and other members of the proposed Settlement Class (i.e., "all present and former hourly employees of Defendant who received longevity pay and/or shift differential pay that was not rolled into their overtime pay during the period November 26, 2015 to November 26, 2019"), which shall constitute adequate consideration for the Settlement and will be made in full and final settlement of: (1) the claims released by Plaintiff and other Class Members; (2) Attorneys' Fees and Reimbursed Litigation Expenses; (3) Costs of Administration; (4) Service Award; and (5) any other obligations of Defendant under this Settlement Agreement.

**Payments to Settlement Class Members.** From the Gross Settlement Amount, the total sum of $422,655.46 shall be allocated to the 4,248 Potential Class Members whose names are listed in the Class Member List attached as Exhibit 5, resulting in an approximate average gross recovery of $99.50 per Class Member.  Payments to Class Members are based proportionally on

each Class Member's overtime damages based on the calculations Defendant's Counsel provided to Class Counsel on May 7, 2019 and updated calculations provided on December 9, 2019, and February 4, 2020. Based on the settlement amount for the Class, Class Members will receive approximately 89% of the calculated damages. Inherent in the proposed distribution method in which Class Members are distributed settlement payments based on their actual damages during the relevant period, the settlement proposal treats Class Members equitably relative to each other. *See* Fed. R. Civ. P. 23(e)(2)(D). Plaintiff, as a member of the Settlement Class, will participate in this recovery under the same procedure applicable to other Class Members. Importantly, this is not a "claims-made" settlement.  All potential Class Members who do not exclude themselves from the settlement will receive a settlement check.

**Service Award.** The proposed Settlement provides for a service award to Plaintiff Margerita Noland-Moore in the amount of $5,000 in recognition of her assistance to Class Counsel and her contribution to achieving the Settlement on behalf of all Class Members. The proposed service award is well-earned. Among other things, Plaintiff Margerita Noland-Moore consulted with Class Counsel at critical stages, attended court hearings and meetings, and provided important documents and information throughout the course of the litigation. Her contributions were instrumental in enabling Class Counsel to negotiate the proposed Settlement.

**Attorneys' Fees and Cost Reimbursements.** From the Gross Settlement Amount, Class Counsel will receive attorneys' fees and costs in the total amount of $191,666.67. After reductions for litigation and settlement administration expenses, the attorney fee recovery will equal approximately 27.9% of the $619,322.13 settlement fund.  (*See* Declaration of Class Counsel at ¶ 37.) The attorneys' fees, and the settlement as a whole, are supported by Declarations of Class Counsel. (*Id.*) As provided in the Settlement Agreement, attorneys' fees

6

and costs to Class Counsel will not be paid by Defendant until after the final approval order is issued by the Court, contemporaneously along with the settlement payments to Plaintiff and other Class Members. (*See* Exhibit 1, ¶¶ 25, 27.).

## IV.     THE PROPRIETY OF APPROVAL

### A.     The Proposed Settlement Qualifies for Court Approval under the FLSA, 29 U.S.C. § 216(b)

This settlement qualifies for Court approval under the FLSA, 29 U.S.C. § 216(b), as to the Plaintiff and other members of the Settlement Class. Most courts approve FLSA settlements in a single step.  In an FLSA settlement, the Court must ensure "there is a bona fide dispute between the parties as to the employer's liability under the FLSA" and that the proposed settlement "is fair, reasonable, and adequate." *Jackson v. Trubridge, Inc*., N.D.Ohio No. 5:16-cv-00223, 2017 U.S. Dist. LEXIS 193782, at *4 (N.D.Ohio Jan. 26, 2017)(quoting *Kritzer v. Safelite Solutions, LLC*, 2012 U.S. Dist. LEXIS 74994, at *19 (S.D.Ohio May 30, 2012)); *Osman v. Grube, Inc*., N.D.Ohio No. 3:16-cv-00802-JJH, 2018 U.S. Dist. LEXIS 78222, at *2 (N.D.Ohio May 4, 2018). *Accord, Landsberg v. Acton Enterprises, Inc.*, 2008 WL 2468868 at *1 n.1 (S.D.Ohio June 16, 2008)(quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353-55 (11th Cir. 1982)).

The Sixth Circuit uses seven factors to evaluate class action settlements, and the *Crawford* court applied those factors in assessing the fairness of an FLSA settlement:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW v. General Motors Corp.,* 497 F.3d 615, 626 (6th Cir. 2007) (citing *Granada Invs., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205 (6th Cir.1992); *Williams v. Vukovich,* 720 F.2d 909, 922-23

(6th Cir.1983)), *quoted in Crawford*, 2008 WL 4724499 at *3. "The Court may choose to consider only those factors that are relevant to the settlement at hand and may weigh particular factors according to the demands of the case." *Cooper*, 2017 U.S. Dist. LEXIS 169237, at *5 (quoting *Gentrup v. Renovo Servs., LLC*, S.D.Ohio No. 1:07CV430, 2011 U.S. Dist. LEXIS 67887, at *3 (June 24, 2011)); *Crawford*, 2008 U.S. Dist. LEXIS 90070, at * 13 (quoting *Redington v. Goodyear Tire & Rubber Co.*, 2008 U.S. Dist. LEXIS 64639, 2008 WL 3981461, at *11 (N.D.Ohio August 22, 2008); citing *Granada Invs., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205-06 (6th Cir. 1992)).

One factor in particular here – the likelihood of success on the merits balanced against the amount and form of the settlement – strongly supports approval. Litigating FLSA claims is always risky and uncertain, and Plaintiffs would have to establish not only Defendant's liability, which Defendant vehemently denies, but also the Plaintiffs' damages. Indeed, wage-and-hour cases for groups of employees are always expensive and time-consuming and the expense and likely duration of continued litigation favor approval. The outcome of litigating the case would be uncertain, and the risks of continued litigation would be high. In contrast, the Settlement assures that the Plaintiffs will receive significant compensation. Given the uncertainties surrounding a possible trial in this matter, the certainty and finality of a settlement that will substantially benefit the Plaintiffs and Opt-Ins is in the public interest. *See Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *24-25 (the public interest is served when a settlement "ends potentially long and protracted litigation")(citing *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 369 (S.D.Ohio 2006); *Hainey v. Parrott*, 617 F. Supp. 2d 668, 679 (S.D.Ohio 2007)). The proposed Settlement will eliminate the risk and delay of litigation and make substantial payments available to the Plaintiff and all other Settlement Class Members.

The other six factors are satisfied as well. There is no indicia of fraud or collusion here. Moreover, given the factual and legal complexity of the issues in this case, there is no guarantee that Plaintiffs will prevail at trial and the litigation could be long and protracted. In contrast, the Settlement assures that the Plaintiffs will receive significant compensation. Given the uncertainties surrounding a possible trial in this matter and potential appeals, the certainty and finality of a settlement that will substantially benefit the Plaintiffs is in the public interest. *See Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *24 (the public interest is served when a settlement "ends potentially long and protracted litigation"). Class Counsel have extensive experience litigating FLSA claims, and there is no fraud or collusion. The Parties engaged in substantial document review, interviews with current and former employees, comprehensive data analysis, and due diligence prior to arduous negotiations, and the issues were well understood. The settlement was reached as a result of arms-length negotiation between Parties represented by competent counsel.

**B.      The Proposed Settlement Qualifies for Preliminary Approval under Rule 23**

"Class actions are meant to serve the public interest by providing an incentive for lawyers and class representatives to litigate on behalf of a group of people whose injury is legitimate and meaningful, but whose individual damages are not substantial enough to make litigation on an individual basis worthwhile." *Lonardo v. Travelers Indemnity Co*., 706 F. Supp. 2d 766, 782 (N.D.Ohio 2010). Amended Fed. R. Civ. P. 23 requires a two-fold determination for preliminary approval of the class action. Rule 23 authorizes the Court to certify the Settlement Class if it satisfies "the four prerequisites of Rule 23(a)"—numerosity, commonality, typicality, and adequate representation—and "meet[s] at least one of the three requirements listed in Rule 23(b)." Recently amended Rule 23(e) provides that the Court may approve the class settlement

"only after a hearing and only on finding that it is fair, reasonable, and adequate…" *See, e.g., Jackson v. Trubridge,* 2017 U.S. Dist. LEXIS 193782, at *6 (scheduling a fairness hearing and granting preliminary approval of a class settlement upon the ground that it was "'fair, reasonable and adequate' to all participants").

Rule 23(e), modified on December 1, 2018, explicitly addresses preliminary approval. The Rule now provides:

> **(e) Settlement, Voluntary Dismissal, or Compromise.** The claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:
>
> (1) *Notice to the Class.*
>
> > (A) *Information That Parties Must Provide to the Court.* The parties must provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class.
> >
> > (B) *Grounds for a Decision to Give Notice.* The court must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal.

As above, the Court must address two questions at the preliminary approval stage: (i) whether it "will likely be able to . . . approve the proposal under Rule 23(e)(2)"; and (ii) whether it "will likely be able to . . . certify the class for purposes of judgment on the proposal." *Id.* Courts have treated the amended standard as superseding the varying "preliminary approval" standards that courts had developed based on decisional law. *See Padovano v. FedEx Ground Package Systems*, 2019 U.S. Dist. LEXIS 107092, *6-7 (W.D.N.Y. June 10, 2019); *In re MyFord Touch Consumer Litig*., 2019 U.S. Dist. LEXIS 53356, *14-16 (N.D. Cal. Mar. 29, 2019); *Swinton v. SquareTrade, Inc*., 2019 U.S. Dist. LEXIS 25458, *13-15 (S.D. Iowa Feb. 14,

2019); *Alward v. Marriott Internatl., Inc.*, N.D.Ohio No. 1:18-cv-02337-PAG, 2019 U.S. Dist. LEXIS 115794, at *2 (July 8, 2019).

The proposed Settlement satisfies the above prerequisites and standards, as shown below.

### 1. Approval of the proposal under Civil Rule 23(e)(2).

When evaluating whether the Court *will likely be able to* "approve the proposal under Rule 23(e)(2)," the court applies amended Rule 23(e)(2)'s approval factors. 23(e) states:

> (2) *Approval of the Proposal.* If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
>> (A) the class representatives and class counsel have adequately represented the class;
>>
>> (B) the proposal was negotiated at arm's length;
>>
>> (C) the relief provided for the class is adequate, taking into account:
>>
>>> (i) the costs, risks, and delay of trial and appeal;
>>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>>
>> (D) the proposal treats class members equitably relative to each other.

These factors are addressed in turn.

#### a. Adequacy of Representation by Class Counsel and Class Representative – Rule 23(e)(2)(A)

Plaintiff Margerita Noland-Moore has aggressively pursued the interests of Class Members in this case, and her counsel have extensive experience in class action litigation including wage-and-hour cases. *Young v. Nationwide Mut. Ins. Co*., 693 F.3d 532, 543 (6th Cir. 2012)(class representatives "must have common interests with unnamed members" and "it must appear that [they] will vigorously prosecute the interests of the class through qualified

11

counsel")(quoting *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996)(citation omitted)). As explained above, the class representative and Class Counsel have adequately represented the class, including but not limited to engaging in substantial document review, interviews with current and former employees, comprehensive data analysis, and due diligence prior to arduous negotiations, and achieved an exceptional result for Class Members.

### b. Arm's Length Negotiation – Rule 23(e)(2)(B)

Advisory Committee Notes provide that this factor considers whether negotiations "were conducted in a manner that would protect and further the class interests." "The participation of an independent mediator in the settlement negotiations virtually assures that the negotiations were conducted at arm's length and without collusion between the parties." *Hainey v. Parrott*, 617 F. Supp. 2d 668, 673 (S.D.Ohio 2007); accord Barnes, 2019 U.S. Dist. LEXIS 65657, at *6.

The settlement here was reached as a result of arm's length negotiation through the assistance of independent mediator Jerome Weiss, an experienced mediator of complex wage and hour cases. The parties engaged in extensive document discovery, mediation and follow-up negotiation, and tedious analyses of damages-related documents and data. The Parties were represented by law firms with extensive experience in wage and hour litigation. Class Counsel certifies that the Settlement Agreement resulting from these negotiations was reached at arm's length and is one that is fair and reasonable to Class Members. This factor is likely to be satisfied.

### c. The Relief is Adequate, Taking into Account the Costs, Risks, and Delay of Trial and Appeal – Rule 23(e)(2)(C)(i)

Advisory Committee Notes note that "[a]nother central concern will relate to the cost and risk involved in pursuing a litigated outcome." Here, the court may consider "the likely range of possible classwide recoveries and the likelihood of success in obtaining such results. That

forecast cannot be done with arithmetic accuracy, but it can provide a benchmark for comparison with the settlement figure." *Id.*

This factor is likely to be satisfied. The proposed Settlement will eliminate the risk and delay of litigation and make substantial payments available to the Plaintiff and all other Class Members. There is no guarantee that Plaintiffs will prevail at trial and the litigation could be long, immensely costly, and protracted. The Parties will likely complete numerous depositions and engage economic and accounting experts in preparation for trial and testimony. In contrast, the Settlement assures that the Plaintiffs will receive significant compensation with little delay and without further costs.

### d. The Relief is Adequate, Taking into Account the Effectiveness of the Proposed Method of Distribution– Rule 23(e)(2)(C)(ii)

Here, the Court "scrutinize[s] the method of claims processing to ensure that it facilitates filing legitimate claims" and "should be alert to whether the claims process is unduly demanding." Advisory Committee Notes. This factor is likely to be satisfied. First, class members are required to do nothing to participate in the settlement – no claim forms or other documents are required to be completed and submitted to participate in the recovery – participation is automatic.

Second, the settlement achieves an excellent result for class members. The settlement results in an average payout of $99.50 per hourly employee of the City who received longevity pay and/or shift differential pay that was not rolled into their overtime pay from November 26, 2015 to November 26, 2019. In addition, the anticipated $422,655.46 distribution represents approximately 89% of the total estimated unpaid wages should Plaintiff and all other Class Members prevail at trial.

### e. The Relief is Adequate, Taking into Account the Terms of the Proposed Award of Attorney's Fees – Rule 23(e)(2)(C)(iii)

As to this factor, Advisory Committee Notes provide that "[e]xamination of the attorney-fee provisions may also be valuable in assessing the fairness of the proposed settlement." As provided in the Settlement Agreement, attorneys' fees and costs to Class Counsel will not be paid by Defendant until after the final approval order is issued by the Court, contemporaneously along with the settlement payments to Plaintiff and other Class Members. (*See* Exhibit 1, ¶¶ 25, 27.). The total combined attorneys' fees and litigation expenses of $191,666.67 represent 30.9 % of the $619,322.13 settlement fund and will be paid at the same time as the employee payments. After reductions for litigation and settlement administration expenses, however, the attorneys' fee recovery will equal around 27.9% of the $619,322.13 settlement fund.  (*See* Declaration of Class Counsel at ¶ 37.)

Moreover, the FLSA provides that the Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendants, and the costs of the action." 29 U.S.C. § 216(b). Ohio wage-and-hour statutes also provide for "costs and reasonable attorney's fees as may be allowed by the court." O.R.C. § 4111.10.

The FLSA's mandatory fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley v. Higgins,* 19 F.3d 1126, 1134 (6th Cir. 1994), *cert. denied,* 513 U.S. 875 (1994)(quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.,* 732 F.2d 495, 502 (6th Cir.1984)). *Accord*, *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *28 (the fee award must be "adequate to attract competent counsel but …

14

not produce a windfall)(citing *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 2008); quoting *Blum v. Stenson*, 465 U.S. 886, 897 (1984)).

In the present case, the efforts of Class Counsel resulted in proposed settlement payments to Class Members representing approximately 89% of the calculated damages. Such allocations are "well above the 7% to 11% average result achieved for class members." *Dillworth v. Case Farms Processing, Inc.,* N.D.Ohio No. 5:08-cv-1694, 2010 U.S. Dist. LEXIS 20446, at *19-20 (Mar. 8, 2010) (citing *see* Frederick C. Dunbar, Todd S. Foster, Vinita M. Juenja, Denise N. Martin, Recent Trends III: What Explains Settlements in Shareholder Class Actions? (National Economic Research Assocs. (NERA) June 1995)). The attorneys' fees, and the settlement as a whole, are supported by the Declaration of proposed Class Counsel, attached as Exhibit 4.

Moreover, prosecuting complex litigation on a class basis is always difficult and time-consuming. The tasks required of Class Counsel in this case included pre-litigation investigation of Plaintiff's and other Class Members' claims and the identities of potential defendants; preparation of the Complaint and First Amended Complaint; negotiation and submission of the Parties' Rule 26(f) report; and investigation and interviewing of current and former employees of Defendant and putative Class Members.

Following the unsuccessful July 24, 2019 mediation prior to which Defendant produced, and Class Counsel analyzed, class-wide documents and data related to the Named Plaintiff and entire putative Rule 23 Class, including weekly payroll and wage & hour records and data, and other data and records. Class Counsel's comprehensive investigation included an analysis of the wage-and-hour information and other data and documents comprising of over 2,000,000 data points from the records produced by Defendant which permitted the Parties to compute a precise calculation of the unpaid overtime for the Named Plaintiff and the entire putative Rule 23 Class.

The analyses were difficult and time-consuming, but proved instrumental to the negotiation of the proposed Settlement. Indeed, the complex issues in this matter required the Parties to break from mediation for several months to permit sufficient time in part given the complexity, diversity and volume of the records produced and issues requiring negotiation.

Applying *Fegley* and *Rawlings v. Prudential-Bache Properties*, 9 F.3d 513, 515 (6th Cir.1993), courts in the Sixth Circuit commonly approve one-third fee awards in wage-and-hour actions, including Rule 23 overtime cases. *See, e.g.*, *Dillworth*, 2010 U.S. Dist. LEXIS 20446, at *18-22 (N.D.Ohio Mar. 8, 2010)(citing *Rawlings* as well as *Jackson v. Papa John's,* Case No. 1:08CV2791, 2008 U.S. Dist. LEXIS 107650 (N.D.Ohio 2008); *Fincham v. Nestle Prepared Foods Co.,* 1:08CV73 (N.D.Ohio 2008); *McGhee v. Allied Waste Indus.,* Case No. 1:07CV1110 (N.D.Ohio 2007)). *Accord*, *Feiertag v. DDP Holdings, LLC,* S.D.Ohio No. 14-CV-2643, 2016 U.S. Dist. LEXIS 122297 (Sep. 9, 2016)(approving 30% award).

Courts reference the NERA study, cited in 2000 as "[t]he most complete analysis of fee awards in class actions conducted to date." *Shaw v. Toshiba America Information Systems, Inc.*, 91 F. Supp. 2d 942, 988 (E.D. Tex. 2000). *See Dillworth*, 2010 U.S. Dist. LEXIS 20446, at *19-20 (citing study conducted by the National Economic Research Associates). The study found that "regardless of size, attorneys' fees average approximately 32% of the [class action] settlement," although "the average result achieved for class members was only 7% to 11% of claimed damages." *Shaw*, 91 F. Supp. 2d at 988 (citing NERA Study at 7 & Exh. 12). Measured by the NERA benchmarks, the proposed Settlement in the present case is exemplary. Class Counsel have actively and aggressively litigated this case against the formidable defense mounted by Defendant. Counsel's efforts included extensive document discovery, mediation and follow-up negotiation, and tedious analyses of damages-related documents and data. The total combined

16

attorneys' fees and litigation expenses of $191,666.67 represent 31% of the $619,322.13 settlement fund and will be paid at the same time as the employee payments.  After reductions for litigation and settlement administration expenses, however, the attorney's fee recovery will equal around 28% of the $619,322.13 settlement fund.  (*See* Declaration of Proposed Class Counsel at ¶ 37.)

The resulting settlement negotiated by Class Counsel ensures substantial payments to the Plaintiff and other Class Members. Based on all relevant factors, the proposed payment of attorneys' fees and cost reimbursements to Class Counsel is proper and reasonable, and fulfills the purpose and intent of the FLSA's fees provisions. Furthermore, as provided in the Settlement Agreement, attorneys' fees and costs to Class Counsel are not to be disbursed until after the final approval order is issued by the Court, contemporaneously along with the settlement payments disbursed to Plaintiff and other Class Members, and service award to Named Plaintiff. *See* Fed. R. Civ. P. 23(e)(2)(C)(iii).

### f.   The Relief is Adequate, Taking into Account Agreements Required to be Identified under Rule 23(e)(3) – Rule 23(e)(2)(C)(iv)

Rule 23(e)(3) requires the parties to "file a statement identifying any agreement made in connection with the proposal."  Here, the Settlement Agreement attached as Exhibit 1 the only agreement connected to this class action settlement.  This factor is likely to be satisfied.

### g.   The Settlement Treats Class Members Equitably Relative to Each Other – Rule 23(e)(2)(D)

Advisory Committee Notes comment that the amended Rule prohibits "inequitable treatment of some class members vis-a-vis others." Inherent in the proposed distribution method in which Class Members are distributed settlement payments based on their actual damages during the relevant period, the settlement proposal treats Class Members equitably relative to

17

each other. *See* Fed. R. Civ. P. 23(e)(2)(D). This distribution method, based on each Class Member's actual hours and potential damages, is eminently the most equitable proposed method of distributing relief to the class.

2.    **Approval of the proposal under Civil Rule 23(e)(1)(B)(ii).**

Now that the parties have shown that that the Court "will likely be able to . . . approve the proposal under Rule 23(e)(2)," we turn to the second consideration under Rule 23(e)(1)(B): whether the court "will likely be able to . . . (ii) certify the class for purposes of judgment on the proposal." Certification of the proposed Settlement Class will enable the Parties to resolve the claims of Plaintiff and all other Class Members. Rule 23 authorizes the Court to certify a class that satisfies "the four prerequisites of Rule 23(a)" – numerosity, commonality, typicality, and adequate representation—and "meet[s] at least one of the three requirements listed in Rule 23(b)." *Glazer v. Whirlpool Corp. (In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litigation),* 722 F.3d 838, 850 (6th Cir.2013). Furthermore, "courts in this Circuit have recognized that ascertainability of class members is an implied prerequisite of Rule 23." *Steigerwald v. BHH, LLC*, 2016 U.S. Dist. LEXIS 21116, *8 (N.D.Ohio Feb. 22, 2016) (citations omitted).

**Numerosity.** The proposed Settlement Class consists of approximately 4,248 hourly employees of Defendant who received longevity pay and/or shift differential pay that was not rolled into their overtime pay during the period November 26, 2015 to November 26, 2019 as contained within the Class Member List attached as Exhibit 5. Numerosity is met.

**Commonality and typicality.** By definition, the Settlement Class consists of all present and former hourly employees of Defendant who received longevity pay and/or shift differential pay that was not rolled into their overtime pay during the period November 26, 2015 to

November 26, 2019, as contained within the Class Member List attached as Exhibit 5. Plaintiff's First Amended Complaint alleged that Defendant owes additional compensation to those persons pursuant to the FLSA and Ohio wage-and-hour statutes, O.R.C. §§ 4111.01, *et seq.* All members of the Settlement Class, including Plaintiff Margerita Noland-Moore, have these claims, and adjudicating them on a classwide basis would "generate common answers that are likely to drive resolution of the lawsuit." *Arlington Video Prods. v. Fifth Third Bancorp,* 515 F.App'x 426, 441 (6th Cir.2013). Plaintiffs' claims as to Defendant's practices are the type of across-the-board practices that establish commonality.

**Adequacy of Representation.** As above, Plaintiff Margerita Noland-Moore has aggressively pursued the interests of Class Members in this case, and Class Counsel have extensive experience in class action litigation including wage-and-hour cases. *Young*, 693 F.3d at 543 (class representatives "must have common interests with unnamed members" and "it must appear that [they] will vigorously prosecute the interests of the class through qualified counsel")(quoting *In re Am. Med. Sys., Inc*., 75 F.3d 1069, 1083 (6th Cir. 1996)(citation omitted)). As explained above, the class representatives and Class Counsel have adequately represented the class, achieving an exceptional result for Class Members. Fed. R. Civ. P. 23(e)(2)(A). *See Dillworth*, 2010 U.S. Dist. LEXIS 20446, at *19-20.

**Predominance.** Civil Rule 23(b)(3) requires that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Whether Plaintiff and other Class Members should have been paid additional overtime compensation was the common issue in this litigation, and this issue is the primary issue driving the proposed Settlement. Common issues clearly predominate "over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3).

**Superiority.** Civil Rule 23(b)(3) requires class litigation to be "superior to other available methods for fairly and efficiently adjudicating the controversy," and describes four factors that are "pertinent" to this superiority requirement. The present case is precisely the type of case in which class litigation is the superior method of adjudication.

Rule 23(b)(3)(A) requires courts to consider class members' "interests in individually controlling the prosecution or defense of separate actions." This factor require the Court to consider whether "Settlement Class Members have any interest in maintaining this litigation as separate actions." *Blasi v. United Debt Servs., LLC*, S.D.Ohio No. 2:14-cv-83, 2019 U.S. Dist. LEXIS 198201, at *15 (Nov. 15, 2019). Here, there is no evidence that this is the case. As here, "the majority of putative class members would not likely have their day in court on these claims if a class is not certified because of a lack of sophistication, lack of resources, lack of representation and similar barriers." *Id.* (citing *Tedrow v. Cowles,* S.D.Ohio No. 2:06-cv-637, 2007 U.S. Dist. LEXIS 67391, at *26 (Sep. 12, 2007).

Rule 23(b)(3)(B) also requires courts to consider "the extent and nature of any litigation concerning the controversy already begun by" class members. No related litigation exists here. The settlement relates specifically and narrowly to overtime claims involving Defendant's practices related to longevity pay and/or shift differential pay that was not rolled into their overtime pay. While there is separate overtime litigation pending against Defendant, that litigation does not involve the narrow claims addressed in this litigation. Therefore, the Settlement proposed will not affect that separate litigation.

Rule 23(b)(3)(C) further requires courts to consider the desirability of "concentrating the litigation of the claims in a particular forum." Here, concentration of claims is in fact desirable because the City of Cleveland is located in this district and division.

Finally, Rule 23(b)(3)(D) asks court to consider any "likely difficulties in managing the class action." Fed. R. Civ. P. 23(b)(3)(D). As noted in *Amchem Prods. v. Windsor*, 521 U.S. 591, 620, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997), this requirement is satisfied automatically when a case is certified for settlement purposes.

**Ascertainability:** "Before a court may certify a class pursuant to Rule 23, the class definition must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class." *Young*, 693 F.3d at 537-38 (internal citations omitted). Here, the ascertainability requirement is satisfied because Class Members are objectively identified through Defendant's payroll and management software and systems.

### C.    The Service Award is Proper and Reasonable

A reasonable service award is "common in class action settlement and routinely approved for the simple reason 'to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation.'" *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *26 (citing *Rotuna*, 2010 U.S. Dist. LEXIS 58912, at *18). *Accord, In re Dun & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366, 373-74 (S.D.Ohio 1990). *Dillworth*, 2010 U.S. Dist. LEXIS 20446, at *17 (Mar. 8, 2010)(approving $6,000 and $4,000 to representative Plaintiffs)(quoting *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 145 (E.D. Pa. 2000); *Osman*, 2018 U.S. Dist. LEXIS 78222, at *5 (approving $7,500 service award to named plaintiff). *Accord, In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 273, 276 (S.D. Ohio 1997).

In the present case, the service award to Margerita Noland-Moore is amply justified by her assistance to Class Counsel and her contribution to achieving the Settlement on behalf of all

Class Members. Indeed, the Named Plaintiff incurred "substantial direct and indirect financial risks in attempting to vindicate the rights of others", and "spent a good deal of time and effort in this case," by, among other things, providing analysis to Counsel, and advising Counsel as to settlement and prosecution of the action. *See In re Dun & Bradstreet*, 130 F.R.D. at 373-74. Plaintiff attended multiple meetings, the case management conference before the Court, and was always readily available to counsel to provide documents, information, and answer key questions throughout the course of litigation. Her contributions were instrumental to achieving the proposed Settlement on behalf of all concerned. The proposed service award of $5,000 is reasonable and well-earned.

 **D.**  **The Proposed Notice Should Be Approved – Rule 23(c)(2)(B)**

 In order to protect the rights of absent members of a Settlement Class, the Court must provide the best notice practicable to all members. *Phillips v. Carlisle & Jacquelin*, 417 US 156, 174-5 (1985). Amended Fed. R. Civ. P. 23(c)(2)(B) specifically provides that "[f]or any class certified under Rule 23(b)(3)—or upon ordering notice under Rule 23(e)(1) to a class proposed to be certified for purposes of settlement under Rule 23(b)(3)—the court must direct to class members the best notice that is practicable under the circumstances…" Such a notice should define the class, describe clearly the options open to the Class Members and deadlines for taking action, describe the terms of the proposed settlement, disclose any special benefits provided to class representatives, provide information regarding attorney's fees, indicate the time and place of the fairness hearing, explain the procedure for distributing settlement funds, provide information that will enable the Class Members to calculate individual recoveries, and prominently display the address and telephone number of Class Counsel and the procedure for

making inquiries. Manual for Complex Litigation at § 21.312. *See* Fed. R. Civ. P. 23(c)(2)(B)(i-vii).

Here, each Class Member will receive notice so that all putative Class Members will be given the choice to participate or not to participate, including the right to preserve any individual claims or rights they may have against the City of Cleveland.

The proposed Notice of Class Action Settlement and Fairness Hearing (the "Notice"), attached as Exhibit 3, should be approved. The proposed Notice gives Class Members a reasonable period of 30 days to opt out of the Settlement Class or object to the Settlement. The Notice defines the class, describes the background of the case and summarizes the terms of the settlement, including the method of allocating individual payments, clearly describes the options open to the Class Members and deadlines for taking action, describes the terms of the proposed settlement, discloses benefits provided to the class representative, provides information regarding attorney's fees, indicates the time and place of the fairness hearing, explains the procedure for distributing settlement funds, informs Class Members how to object to the Settlement or request exclusion from the Class if they so choose, provides information that will enable the Class Members to calculate individual recoveries, and prominently displays the address and telephone number of Class Counsel and the procedure for making inquiries. The Notice is written in plain and understandable language. The Parties request approval of the Notice as drafted. If approved, the Notice will be sent to Potential Class Members by first class mail. The Notice will be effectuated through "United States mail." Rule 23(c)(2)(B). In sum, the Notice constitutes the "best notice that is practicable under the circumstances," and, therefore, should be approved.

      **E.**     **The Court Should Appoint Scott & Winters as Interim Class Counsel.**

Rule 23(g)(3) provides that the Court "may designate interim counsel to act on behalf of the putative class before determining whether to certify the action as a class action." Following notice, at the final approval stage, interim Class Counsel may seek to be appointed class counsel. Rule 23(g)(1). Here, Scott & Winters respectfully requests the Court to appoint them as interim Class Counsel. As outlined in Counsel's Declaration, proposed Class Counsel are highly experienced lawyers handling class actions, other complex litigation, and the types of wage and hour claims asserted in the action. (*See generally* Declaration of Class Counsel.)

## V. <u>CONCLUSION</u>

For the reasons addressed above, the Parties respectfully request that the Court enter the proposed Preliminary Approval Order, attached as Exhibit 2.

Respectfully submitted,

*s/ Ryan A. Winters*
Joseph F. Scott (0029780)
Ryan A. Winters (0086917)
Kevin M. McDermott II (0090455)
SCOTT & WINTERS LAW FIRM, LLC
The Caxton Building
812 Huron Rd. E., Suite 490
Cleveland, OH 44115
P: (216) 912-2221   F: (216) 350-6313
jscott@ohiowagelawyers.com
rwinters@ohiowagelawyers.com
kmcdermott@ohiowagelawyers.com

*Attorneys for Plaintiff and the Rule 23 Class*

*s/*
Jon M. Dileno (0040836)
jmd@zrlaw.com
Ami J. Patel (0078201)
ajp@zrlaw.com
Lauren M. Drabic (0097448)

lmd@zrlaw.com
Zashin & Rich Co., LPA
950 Main Avenue, 4th Floor
Cleveland, OH 44113
T:  216/696-4441
F:  216/696-1618

*Attorneys for Defendant*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing was filed electronically.

Notice of this filing will be sent by operation of the Court's electronic filing system to all parties

indicated on the electronic filing receipt.

*s/ Ryan A. Winters*
Ryan A. Winters (0086917)